WOODWORTH (MONCE v.).    See Case No. 9,706.

## Case No. 18,018.

WOODWORTH et al. v. ROGERS et al.

[3 Woodb. & M. 135; [1] 2 Robb, Pat. Cas. 625.]

Circuit Court, D. Maine. May Term, 1847.

PATENT FOR INVENTION—INJUNCTION AGAINST USE—VIOLATOR IN CONTEMPT—MOTION TO DISSOLVE—EVIDENCE—TRIAL BY JURY.

1. A party who has been enjoined against the use of a patent, is guilty of a contempt if he afterwards use another patent similar in principle, when the author of the last had previously been enjoined by the owner of the first patent.

2. He can purge himself of such contempt only by satisfying the court that he was not aware that the last patent had been enjoined.

3. If one makes an improvement in a prior patent, obtained by another, it gives him no right to use what had before been patented, without license, while the term of the prior patent continues.

[Cited in Star Salt Caster Co. v. Crossman, Case No. 13,321.]

1 [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

4. Where a special injunction against the use of a patented machine has been imposed when a bill is filed, motions to dissolve it will not be heard on the same evidence. or new evidence improperly neglected to be offered before; but will be on new and material testimony.

[Cited in Hussey v. Whitely, Case No. 6,950; National School Furniture Co. v. Paton, Id. 10,050.]

5. When an answer is filed to the bill denying the validity of the patent, and evidence supporting the answer, prima facie, is offered, the injunction will be dissolved, unless the other side file counter-evidence sustaining the validity of the patent. What generally is proper evidence on that point, considered.

6. It is the duty of the court to weigh the evidence, and if the balance seems in favor of the plaintiff, to continue the injunction till a trial of the right can be had at law, by an issue out of the chancery side of the court, or by an action at law. If the parties cannot agree on an issue, the court will direct an action at law to be brought speedily, to settle the conflicting title; and if not done, will dissolve the injunction.

[Cited in Earth Closet Co. v. Fenner, Case No. 4,249.]

7. The remedy by injunction. used in this way, does not impair any right to a trial by jury, as secured by the constitution, but merely aids the party appearing to have the legal title, till such a trial, if desired, can be had.

This was a bill in equity, filed September 8, 1846. It averred, that the plaintiffs possessed the title to the patent rights of William Woodworth, Senior, to the planing machine alleged to have been invented by him. That the defendants were using one of said machines, or one substantially like them. That the plaintiffs had before recovered a verdict and judgment against one J. Gould, for the use of a like machine; and had requested the defendants to desist from infringing on the rights of the plaintiffs therein, but they refused to comply. The bill prayed for a discovery how long the defendants had used the machine, and after asking replies to several interrogatories, requested that the defendants be made to account for the profits derived from the machine, and be enjoined from any further use of it; and for such other relief as might seem meet. The respondents, in November, 1846, filed answers to the bill. That of [Lawrence] Rogers, which is the only one now under consideration, answering the interrogatories, set out, that some months before May, 1846, he used a machine similar to that claimed by said Woodworth as his, but has not done it since, nor used, since, any similar machine; and hence, considers himself not bound to answer further. Rogers then proceeded to deny that Woodworth was the original inventor of the machine patented by him in December, 1828; and that he well knew that fact, and thus obtained his letters, therefore, fraudulently. He further averred, that the surrender of the patent, July 8, 1845, and the taking out a new specification for the same machine, instead of for one before defective, was for a new and different thing from what had been before claimed; and this being known to

Woodworth, made the last patent void. Rogers then prayed that an issue be ordered by the court, and sent to a jury, to try the question of fraud in obtaining the patent in 1828, and the amended specification in 1845.

On the 19th of January, 1847, after a hearing before Sprague, District Judge, a special injunction issued against Rogers not to use the planing machine patented by Woodworth, or any one of similar construction. In February, 1847, a motion was filed to punish Rogers for a contempt in violating that injunction. At the hearing for this contempt, it was proved, that a planing machine like the plaintiffs' was used in Rogers' shop; but, on his affidavit that it was run by others who leased the shop from him for hire, and the court considering it doubtful whether his connection with it was such as to render him responsible for its use, he was exonerated from the supposed contempt, on the payment of the costs of that motion. On the 17th April, 1847, the plaintiffs filed another motion against the respondent, Rogers, for another contempt in violating said injunction, since the previous hearing. On the 27th May, 1847, he put in an answer, denying his breach of that injunction, and adding, that since the 18th of February, 1847, he had used a machine in his shop like that invented and patented by Benjamin Brown, of Vermont, on the 9th of November, 1845; and the right to use which Rogers bought of James H. Edwards, assignee of Brown; and that it is not substantially like any machine said to have been invented and patented by Woodworth, 27th December, 1828, as heretofore described by the plaintiffs in their original bill. The answer adds, that if the plaintiffs claim, under their patents, any such machine substantially as that used by Rogers, William Woodworth was not the original inventor thereof; and if any such one is described in his letters of July, 1845, they were obtained on false representations and fraud. That there was no defect in his specification of December, 1828, and if any existed, it arose from design and fraud, and not from mistake. And that the letters patent of July, 1845, if purporting to cover such a machine, were obtained corruptly and falsely, and made to embrace what he knew belonged to others. On the 1st of June, Rogers filed amendments to the above answers, denying again the title of the plaintiffs to the Woodworth patent within the limits of Boston, and restating, with formal variations, his charge of fraud in the new letters patent, issued July 8, 1845, and the want of identity between the subject of them and the letters of December, 1828, and also charges of fraud committed on congress in procuring the extension made by it. The amendments not only repeated these matters, but set up Daniel Dunbar, of South Boston, to be the earliest and true inventor of the planing machine used by Woodworth. They next averred, that the pressure rollers, named in his patent, had been well described in a patent to Samuel Bentham, in 1783, and other parts in a patent to J. Bramah, in England. in 1802. They further alleged, that Daniel N. Smith, of Warwick, Mass., invented and patented a machine similar to Woodworth's, in 1826, and that James Hill, of Lynn, and Joseph Hill, and several others, had knowledge of a like machine made by said James and Joseph, prior to Woodworth's first patent—and similar allegations were made as to the invention of such a machine by John Hale, of Oakham, Mass., and that the rollers were known and used by James Baldwin, of Westford, Mass., as early as 1818.

At the first hearing of this case, to punish Rogers for a contempt, by violating the injunction, another motion was made by the counsel of Rogers to dissolve the original injunction imposed by Sprague, District Judge. It was agreed, that these two motions be argued together; and it was further agreed that time should be allowed to Rogers to procure and file testimony, pertaining to both motions, and the plaintiff have further opportunity to procure testimony in reply. Various affidavits and other evidence were accordingly put into the case on both sides at the times mutually agreed. Reference will be made in the opinion of the court to such portions of them as seemed important under each motion.

B. R. Curtis, for plaintiffs.
Mr. Tasker, for defendant.

WOODBURY, Circuit Justice. The first question to be disposed of, is the motion against Rogers, for punishment for a contempt in violating an injunction which was granted in this case against him in favor of the plaintiffs. That injunction was against the use of the planing machine invented by Woodworth, or any machine substantially the same. It was in these words: "You shall not use or vend any one, or more of the machines substantially the same in construction as the machine of the said Wm. Woodworth, patented as mentioned in the said bill of complaint, on the 18th day of July, A. D. 1845."

The first inquiry is, what are the matters of fact and law which are properly to be examined on this motion? They are—not the originality of Woodworth's machine, not any fraud in the renewals of it, not the propriety of the original injunction. Those questions were all passed on, so far as made and as material in this motion for a contempt, at the original hearing before my associate. They are for the present inquiry, therefore, res judicata.

But it is important here to ascertain whether Rogers—and that is the next step in the inquiry—while under the injunction not to use any machine, substantially like Woodworth's, has disregarded the rights of the plaintiffs and the authority of the United States, as existing in the circuit court, so as to violate the order given to him? Has he, after a full hearing, and in contempt of that

order, proceeded to use a planing machine similar in principle to Woodworth's? As to this, it is admitted by Rogers, that since the 15th of February, 1847, about the time he paid the costs on the previous motion to punish him for contempt, he has used a planing machine invented by Benjamin Brown and patented in November, 1845. But he denies that this machine is substantially like the planing machine patented by Woodworth. The plaintiffs contend, it is in principle the same, and its use is therefore a breach of the injunction. This, then, is the point controverted, which is to be settled. What is the evidence on this question? and how is the balance of it?

Various witnesses on the part of the plaintiffs, and among them some highly intelligent machinists and experts, testify unqualifiedly, that this machine, now used by Rogers, is the same in substance and principle as Woodworth's. On the contrary, several witnesses testify in his behalf, that they consider this machine as differing in substance or principle from the plaintiffs'. But some of these last describe this difference to consist in certain specified improvements made by Brown on the original machine of the plaintiffs, rather than as containing parts, all of which vary from Woodworth's, or which are independent and different from his. Thus, Isaac Adams, for one instance, speaks of Brown's machine being different, but still containing "a combination claimed in the Woodworth patent." And others, like J. E. Andrews, admit that Brown's machine uses, substantially, two parts of Woodworth's own, "the cutting cylinder and a small guide roller."

In the examination of this evidence, as well as of Brown's own letters patent, which are put into the case, and in which he claims to have "invented a new and useful improvement in planing machines," it hardly can be doubted that his machine contains some of the most important parts of Woodworth's, but is in other respects different, and perhaps an improvement on it. It is well known, however, as sound law, that where a machine has been invented like that of Woodworth's, in 1828, no one can make an improvement on it, and use important portions of the original invention, while the original term, or the renewals of it, exist, without the license of the original patentee, or a purchase from him of the right so to use what belongs to him. Hovey v. Stevens [Case No. 6,745]. Washburn v. Gould [Id. 17,214]. See Act Cong. Feb. 21, 1793 (1 Stat. 323). For the same reason, if the improvement by a succeeding inventor be genuine and important, no one can use that improvement without a license or purchase from him, although they have obtained the right to use the original machine on which the last invention is an improvement.

In this view of the evidence and law, therefore, Rogers is using a machine, which in its substance and principle contains important portions of Woodworth's patent, though it may in other respects have some qualities or parts which are new or improved, and, in thus using what is material in Woodworth's invention, he certainly violates the injunction. But I can conceive, if the case stopped here, that some apology might exist in the apprehension of the party, that because Brown's machine was considered by several as an improvement on Woodworth's, he might use it without violating Woodworth's rights, or paying him for such parts of his as are included in Brown's. To see then whether a designed evasion of the order, or, in other words, a contempt was committed, it is proper to look further into the testimony on the part of the plaintiffs. They proceed to show further, that the question, whether Brown's machine is original and independent of Woodworth's, so as to entitle him to make and use it, or license others to, without Woodworth's permission, is a question which has already been settled. It has been settled, too, against Brown himself, and in favor of Woodworth, after a full hearing in the circuit court of the United States, in the Vermont district, where Brown resides.

The evidence is direct and plenary as to this, and furthermore that Brown has been put under an injunction, in behalf of Woodworth, not to use without Woodworth's license, the machine for which Brown took out a patent in 1845, and which Rogers is now using. The proceedings were commenced May 7, 1846, by Hickok, an assignee of Woodworth, against Brown and others, alleging that Brown's machine in all material parts was substantially the same as Woodworth's, and asking an injunction against it; and, after hearing affidavits and arguments on both sides, at the May term of the circuit court for Vermont, in 1846, an injunction was issued against the further use of Brown's machine without a license from Woodworth, or his assignees, on the ground that it was an infringement on their rights. It can hardly be tolerated after this, happening as long ago as May, 1846, that a person, under injunction not to use a machine substantially like Woodworth's, should proceed to purchase and use one, which had, after a public hearing in an adjoining circuit, been enjoined against as substantially alike,—and that in a legal proceeding against the patentee himself.

On all this evidence the court would be blind to the facts, and unfaithful to the rights of parties and the public, to allow such evasions of their orders and decrees; and it feels compelled to say on this evidence, unexplained, not only that their injunction has been violated, but in a manner highly culpable. We would not, however, bar the respondent from any exculpation which truth may warrant. If he can show that he was entirely ignorant of this injunction against Brown during the time he has

been using Brown's machine, it would go far in extenuation. This he can do, presumptively at least, by the affidavit of Edwards, his vendor, showing that Edwards was ignorant of that injunction; or if not so, did not communicate the fact to Rogers; and also by his own affidavit. purging himself of all knowledge of the proceedings in Vermont, from either Edwards or others, and all design to evade the orders of this court in the use of Brown's machine.

The other motion to dissolve the injunction, imposed on Rogers by my associate, presents a different question, and is to be governed by several rules and considerations entirely dissimilar. The main point in that is not whether an injunction should be imposed at all, for that has already been done, and after a full hearing—and till the contrary is shown it is to be presumed it was done rightly. Woodworth v. Hall [Cases Nos. 18,016 and 18,017]; Maxwell v. Ward, 11 Price, 17. "Omnia presumuntur rite esse acta." The burthen, then, is on the respondent to overcome that presumption. It is open to be overcome by new matter or evidence arising since the injunction was imposed, though very seldom by matter then existing, which the party neglected to present to the consideration of the court. If this were not the rule, the same matter might be offered anew, or matter before neglected offered on new motions to dissolve injunctions, weekly, the year round, and the court be entirely occupied either in virtual rehearings of like facts and like arguments in one and the same cause, or in considering what the petitioner had before improperly neglected to introduce. The new matter, usually relied on in cases of this category, is a subsequent answer, denying the originality of the patent or its validity in other respects and supporting the objection, if contested ·by the plaintiff, with prima facie proof not rebutted. Poor v. Carleton [Case No. 11,272]. Or it is by showing a trial at law, since had between these parties, and at times between others, involving like questions, and a judgment rendered against the validity of the patent.

The ground chiefly relied on here is, therefore, a subsequent answer, which not only denies the originality of Woodworth's patent in 1828, but the validity of the succeeding renewals of it, both by the board for the patent office and by congress, through gross frauds, alleged to have been practised on them by Woodworth and his assigns. This denial of legal title in the plaintiffs, made by the respondent, under oath, is not without some weight, when standing alone. Once it was deemed sufficient to dissolve an injunction, already specially granted on a hearing, and ·not a mere common injunction, issued of course. See the cases, collected in Poor v. Carleton [supra], and Orr v. Littlefield [Case No. 10,590]. But such is not the law or the practice now, either in England or

this country. See cases last cited, and 16 Ves. 49; 19 Ves. 183; 11 Price, 17; Perry v. Parker [Case No. 11,010]. The presumptions arising from the answer, may now be disproved by evidence on the part of the plaintiffs, and then counter testimony is admissible by the respondent to sustain his answer. After this, it becomes the duty of the court to balance these allegations and proofs, and decide how the weight of them is; and whether in the exercise of a sound discretion upon them the injunction ought to be dissolved or not. 2 Ves. Sr. 19; 2 Johns. Ch. 204; Poor v. Carleton [supra].

Here the plaintiffs have offered a variety of evidence to countervail and disprove the answer, and also the testimony introduced by Rogers. (1) They show not only the letters-patent themselves, to Woodworth, which are public records and acts of public officers, that are alone prima facie evidence for the patentees of the validity of their claim, but next (2) the oath of the patentee, when they were obtained, that he was the original inventor. Alden v. Dewey [Case No. 153]. (3) Next a subsequent confirmation of his claim as inventor, by the renewal of those letters by the board of the patent office. (4) Next, such a confirmation by congress itself, in granting a further term for the patent. (5) Next, the possession and a use and sales of this patent and numerous machines over the whole country, and for large sums of money, as if rightfully entitled to it, for nearly twenty years past. Hind. Pat. 305; Drury, Register, 320–322; Orr v. Littlefield [supra]. The doctrine in England, as to this alone, is very strong. In Bickford v. Skewes, 4 Mylne & C. 500, the lord chancellor says: "If the patentee has been long in possession, the court will not look into the title, but will give credit to it, until displaced by a trial at law." It is stated that in the adjoining circuit, one of my brethren on the bench of·the supreme court (Nelson, J.) has recently held this circumstance alone to be sufficient to retain an injunction. Next, (6) by a recovery of damages in a court·of law for an infringement on it, after a severe contest in this circuit, under my predecessor. Woodworth v. Sherman [Case No. 18,019]; Washburn v. Gould [Id. 17,214]; Woodworth v. Stone [Id. 18,-021]. This involved the originality of his invention as against Evans and all others then set up. (7) Next, the recovery in courts of equity in several cases where his rights were contested, not only in the different circuits of the United States, but in several cases, fully heard and considered in the supreme court of the United States, and some of them involving the originality of this very invention. [Woodworth v. Benjamin] 4 How. [45 U. S.] 712, 716. (8) Next, special injunctions, that have been obtained in great numbers, many of which are still pending, and none of which are shown ever to have been dissolved on a hearing upon the merits,

as to the validity of the patent. (9) And, finally, a special injunction obtained, after resistance, against this very defendant.

Such facts, in these preliminary inquiries into the legal title, as connected with the propriety of imposing or dissolving an injunction, are proper and legal ones to influence the decision of the court, are paramount in their character over all individual opinions of witnesses, and should usually be conclusive till parties contest these claims in some issue in a court of law and disprove or rebut their force. See Orr v. Littlefield [supra], and the cases cited there. Their great strength, when united as here, is entirely superior to any evidence offered against them by the respondent. It is true that the matters in the answer are attempted to be sustained by Rogers by evidence and documents. But some of them relate to mere hearsay statements; some are from persons under injunctions against the use of this same machine of Woodworth's, and some are open to various other objections, soon to be explained, and decisive against them. It deserves special notice, that among several instances named, where the planing machine is supposed to have not been sustained, that not a single case is shown for Rogers, by proper proof, of a recovery at law or in equity against Woodworth's patent. The cases referred to rest on hearsay, or are apocryphal. Again, where in some instances, after special injunctions have been obtained, it is shown by him that the plaintiffs became nonsuit, the evidence or rebuttal is, that the respondents were irresponsible and not able to pay the cost of further proceedings; or they were cases in which some assignee, and not Woodworth and his immediate representatives, conducted the prosecution, and were not nonsuits or dismissals made by order of the court on a hearing. In the case cited from Maryland, where an injunction was dissolved, it does not appear to have been from want of title. The respondent was still required to keep an account, thus recognizing for some purposes the primâ facie right as to the patent, but deeming the remedy by injunction unsuited to the circumstances there existing, or unjust, or unnecessary, as it is at times when the defendant is in large business and amply responsible for any damages. Bramwell v. Halcomb, 3 Mylne & C. 739. Or, what seems most probable, it was a case of a common, and not a special injunction. The former is usually dissolved as a matter of course, on the coming in of an answer denying merits, or a legal title in the plaintiffs, and without any inquiring into the truth of the allegation. See Orr v. Littlefield, supra; 3 Mer. 622; Poor v. Carleton, supra; Eden, Inj. 88.

Notwithstanding these exceptions to this evidence, when coupled with the denials and allegations in the answer—they all standing alone, and not rebutted by the plaintiffs, would probably be a sufficient ground for dissolving the injunction. They would furnish this, because making, probably, when standing alone, a primâ facie case, that the plaintiffs had no legal title; and an injunction is intended to aid or protect what seems to be a legal title. It is granted for this purpose, when issued before a trial, on presumptive evidence offered of such a title; and it stands on that till the probabilities furnished by the plaintiffs of their having a legal title are overcome by answers and counter oaths, and proofs of a stronger character by the respondents than those adduced by the plaintiffs, or by a subsequent trial at law in which such counter proofs have been examined and been successful. 3 Mylne & C. 739. But being, as the respondent's answer is, as well as his evidence, counteracted by the strong and numerous facts offered by the plaintiffs to rebut them, the probabilities seem to me wholly changed, and to be decidedly in favor of the validity of Woodworth's patent. His proofs are of a character entirely to overcome what might otherwise be inferred from the defendants. Take Dunbar's affidavit, for one instance, as to the material point concerning the originality of the invention. He testifies as to what transpired before the patent, and it has been slept over for a generation, and till Woodworth (senior) is in his grave, and till the originality has been not only sworn to by the patentee, but when attacked frequently since has been sustained triumphantly in the supreme court of the United States, as well as in several circuits, and before congress itself. Leading circumstances, like these, should also overcome the statements of the defendant from mere hearsay as to fraud—an imputation, which, above all others, is to be proved clearly or not at all. Roberts v. Anderson, 2 Johns. Ch. 202. And they outweigh all loose and general impressions as to no differences in principle existing between Woodworth's and other old machines, when this has been so often tested in courts where witnesses were cross-examined, and what is meant by principle has been often found and explained to be only such changes in form as turn out to be immaterial, or a substitution of only what are well known to experts to be mere mechanical equivalents.

Another consideration has been urged against the continuance of this injunction which deserves some notice. It is the alleged illegality or oppression of this remedy and its great encroachment on the trial by jury, and consequently the propriety of dissolving it in this instance. But the power exercised under injunctions has existed from the early ages of chancery jurisdiction, and is remedial and useful as a preventative of injury and a multiplicity of lawsuits, when it is properly exercised. It is also a power

conferred on this court in one of the earliest acts of congress, passed after the adoption of the constitution. 1 Stat. 81, §§ 13, 14; Id. 334. It has constantly been used by it since for more than half a century. It is a mistake, likewise, to suppose that this power, in its legitimate use, impairs, supersedes, or prevents the trial by jury where it has ever existed. In most questions pending in courts of chancery, or on the equity side of courts of law, a trial by jury has never been usual in this country or abroad. The seventh amendment to the constitution secures that trial only in cases "at common law." But still chancery may order an issue to be tried at law to help itself as to facts, and retried, if dissatisfied with the verdict. 2 Price, 314, note; Id. 416, note. Or it may decide facts for itself in all cases, except, perhaps, in England, in the case of an heir-at-law disputing a will, and a rector suing for tithes. Bullen v. Michel, 2 Price, 423. So a jury trial can always be had, and is cheerfully allowed in cases like this, connected with injunctions, where the rights and titles of parties are doubted in law and facts are supposed to exist which are disputable and proper to be settled by a jury. Bramwell v. Halcomb, 3 Mylne & C. 737. An injunction is never issued in hostility to what seems to be the legal rights of the parties, but in the aid and protection of them. At first, it is as those rights appear before trial, and only till a trial by jury can be had, if desired. Ridgway v. Roberts, 4 Hare, 108; 17 Ves. 422. And whenever a trial is had, before a jury or otherwise, which shows that the rights at law are with the party enjoined, the injunction is, as a matter of course, dissolved. Bickford v. Skewes, 4 Mylne & C. 498. Nor does the injunction delay or retard a trial by jury, but makes the prima facie title prevail till then. Harman v. Jones, 1 Craig & P. 299; Hilton v. Granville, 1 Bail. Cas. 120 [Craig & P. 283].

In the present case it was imposed in favor of the party appearing on the evidence to possess the legal right to the patent and machine. It was done only the last winter, and after full hearing, and has been no obstacle since to the respondent having a jury trial as soon as he was sued in a court of law, where such trials can alone be had, or as soon as he put in an answer here which denied the legal title of the plaintiffs and requested a trial at law, and that trial can in due course be had. This he has not done till the last month; and now having had a hearing on this request, and the injunction being still retained to aid and protect what still seems to be the legal title till the contrary is fully shown, he can have a jury trial of the title to this patent whenever issues can be found by the parties and the case prepared for a hearing upon them; or, if preferred, as soon as an action at law can be instituted and prepared. The bond which he voluntarily offers, to secure the damages and costs which may be recovered, obviates the objection which is sworn to have existed in going on further with some other cases and having a trial on them.

On the last circuit, where an answer like this was put in and the parties did not agree to form an issue to be tried by a jury, out of the equity side of this court, I directed that unless a suit at law was brought at the next term to try the legal title, the injunction should then be dissolved. See Orr v. Merrill [Case No. 10,591]; Perry v. Truefitt, 6 Beav. 418; 9 Jur. 717; 3 Mylne & C. 739; 6 Jur. 269; Caswell v. Bell, 2 Railway & Can. Cas. 782; Clarence R. Co. v. Junction R. Co., Id. 763. I am ready to do the same here, but see no sufficient grounds for ordering it to be dissolved at this time, when there appears so decided balance of testimony in favor of the plaintiffs' legal rights to this patent.